WK:MEB/DGR
F. #2015R0303

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

ABDEL SOLIMAN and
AURORA SPAVEN,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N F O R M A T I O N

Cr. No. 17-7 (S-1) (ERK)
(T. 18, U.S.C., §§ 371, 981(a)(1)(C),
1349 and 3551 et seq.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C., § 2461(c))

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTION

At all times relevant to this Superseding Information, unless otherwise indicated:

I.    The Defendants

      1.    The defendants ABDEL SOLIMAN and AURORA SPAVEN were tax preparers who resided in Astoria, Queens.

      2.    Between approximately 2012 and 2014, the defendants ABDEL SOLIMAN and AURORA SPAVEN, together with others, operated Soliman Tax Services Corporation ("Soliman Tax Services"). From approximately 2015 to the present, SOLIMAN and SPAVEN, together with others, operated Ascension Tax Services Corporation ("Ascension"). Both Soliman Tax Services and Ascension were based in Astoria, Queens.

II.   The Tax Fraud Scheme

3. In or about and between January 2012 and December 2016, the defendants ABDEL SOLIMAN and AURORA SPAVEN, together with others, prepared U.S. Individual Income Tax Returns, Forms 1040 ("Forms 1040"), and associated schedules for clients of Soliman Tax Services and Ascension. A Form 1040 was an annual income tax return filed with the Internal Revenue Service ("IRS") by a U.S. citizen or resident in which the citizen or resident reported income and deductions to determine the amount of tax owed or the amount to be refunded to the taxpayer. SOLIMAN and SPAVEN, together with others, filed and caused to be filed Forms 1040 for their clients with the IRS electronically from the Eastern District of New York to IRS offices located outside of New York, including an IRS office in Andover, Massachusetts.

4. Wage and Tax Statements, Forms W-2 ("Forms W-2"), were used by employers to report annual employee compensation to the IRS. Specifically, a Form W-2 reported the employee's annual wages, earnings and tips, and the amount of taxes withheld from the employee's wages by the employer. Companies were required to provide copies of their Forms W-2 to both the employee and the IRS. A Form W-2 was typically attached to an employee's electronically filed Form 1040.

5. The defendants ABDEL SOLIMAN and AURORA SPAVEN, together with others, submitted Forms 1040 on behalf of Soliman Tax Services and Ascension's clients that included and attached false and fraudulent Forms W-2 that indicated that the clients had received wages from certain companies, and had made tax payment withholdings, when, in fact, and as SOLIMAN and SPAVEN knew, those clients had not. Those

companies included: (1) Future Group & Car Service, Inc. ("Future Group"); (2) Medical Solutions Supply of NY, Inc. ("MSS"); (3) MSM Food Corporation; (4) Zaina Supply, Inc.; (5) Hammer and Lumber Corp. ("Hammer and Lumber"); and (6) WN Distributor Corporation ("WN Distributor") (collectively, the "False Companies"). The False Companies never filed with the IRS any Forms W-2 for any employees, nor any corporate tax returns.

6. Between approximately 2012 and 2015, the defendants ABDEL SOLIMAN and AURORA SPAVEN, together with others, submitted and caused to be submitted approximately 400 Forms 1040 for certain clients of Soliman Tax Services and Ascension that attached Forms W-2 that reported purported wages and tax withholdings for those clients from the False Companies. In those Forms 1040, SOLIMAN and SPAVEN, together with others, requested tax refunds totaling approximately $2,880,000 from the IRS on behalf of certain clients of Soliman Tax Services and Ascension. Further, those Forms 1040 directed that approximately $500,000 of those fraudulent refunds be sent by the IRS to bank accounts controlled by SOLIMAN and SPAVEN.

III. The Labor Fraud Scheme

7. In or about and between March 2016 and January 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ABDEL SOLIMAN and AURORA SPAVEN, together with others, executed a scheme to defraud the New York State Department of Labor ("NYSDOL") through the filing of false claims for funds from the New York State Unemployment Insurance Fund ("NYSUIF").

A. <u>The NYSDOL Unemployment Insurance System</u>

8. The Social Security Act of 1935 established a federal and state unemployment system designed to provide benefits to certain persons who were unemployed. Each state administered a separate unemployment insurance ("UI") benefits program with guidelines established by federal law. The United States Department of Labor exercised general oversight over the unemployment program to ensure that the program was properly and efficiently run and was responsible for determining that state-operated programs were in conformity with federal law.

9. In New York, the NYSDOL operated the unemployment system. The NYSDOL determined whether an unemployed worker qualified for unemployment benefits under applicable law. Funds for the NYSUIF came from taxes paid by employers, the State of New York, and the federal government.

10. Claimants submitted an initial claim for UI benefits via telephone or the Internet, and provided certain information to the NYSDOL, including his or her name, date of birth and social security number, in connection with the claim. The benefit rate that a claimant received was based on a formula that factored in, among other things, the claimant's wages earned during the period and the number of quarters worked. If the claimant worked even a portion of the quarter, he or she would qualify for having earned wages during that quarter. Thus, NYSDOL's formula was, in part, based on both the amount of compensation and the number of quarters worked.

11. A claimant received his or her UI benefits in multiple forms, including by direct deposit to a bank account or by debit card mailed to the claimant at an address the claimant provided to the NYSDOL in connection with the claim. During the time-period

5

relevant to the defendants' scheme, debit cards for UI benefits were issued by a financial institution based outside of the State of New York ("Bank-1") and whose identity is known to the United States Attorney, in the name of the individual who filed the UI benefits claim with the NYSDOL.  Once the claimant received the debit card, the claimant activated the card by contacting Bank-1 by telephone.  Once the claimant activated the debit card, the claimant could withdraw funds by using the debit card at any automated teller machine ("ATM").

12.  A claimant was required to establish his or her continued eligibility for UI benefits on a weekly basis by answering a series of questions by telephone or through the NYSDOL's website.  After a claimant established his or her continued eligibility for UI benefits with the NYSDOL, the funds on the claimant's debit card were replenished for the following week.

B. The Defendants' Fraudulent Scheme to Obtain NYSUIF benefits

13.  In or about and between March 2016 and January 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ABDEL SOLIMAN and AURORA SPAVEN, together with others, executed a fraudulent scheme to obtain UI benefits from the NYSDOL using the names, addresses, and dates of birth ("means of identification") of multiple individuals.

14.  In furtherance of this fraudulent scheme, the defendants ABDEL SOLIMAN and AURORA SPAVEN, together with others, filed false quarterly wage reports with NYSDOL for two companies, Elma Corp. d/b/a Era Cafe Lounge ("ELMA CORP") and 2338 Food Corp ("2338 FOOD CORP").  Those reports listed numerous employees who purportedly earned wages from ELMA CORP and 2338 FOOD CORP in 2015 and 2016.

However, the information on these forms was false, as ELMA CORP and 2338 FOOD CORP had ceased operations prior to the dates of the purported employees' employment.

15. In or about and between April 2016 and October 2016, the defendants ABDEL SOLIMAN and AURORA SPAVEN, together with others, filed false UI benefits claims with NYSDOL in the names of the individuals who purportedly were employed by ELMA CORP or 2338 FOOD CORP. For each UI benefits claim they filed, SOLIMAN and SPAVEN, together with others, provided a name, social security number, telephone number, date of birth and mailing address, among other personal identifying information for the purported claimant.

16. After the defendants ABDEL SOLIMAN and AURORA SPAVEN, together with others, filed these UI benefits claims, NYSDOL issued UI benefits to some of the purported claimants via bank debit cards that were mailed to the purported claimants at the addresses SOLIMAN and SPAVEN, together with others, had indicated in the false filings to NYSDOL. Thereafter, SOLIMAN and SPAVEN, together with others, obtained the debit cards and used them to access the NYSUIF funds issued to the purported claimants.

17. For example, on or about June 10, 2016, the NYSDOL website received a UI benefits claim from a purported claimant ("Claimant-1"), which listed personal identifying information for Claimant-1 and stated that Claimant-1 had been employed by ELMA CORP. The claim also listed Claimant-1's mailing address as an address in Astoria, New York, which was actually an address used and controlled by the defendants ABDEL SOLIMAN and AURORA SPAVEN (the "Defendants' Address"). A bank subsequently mailed Claimant-1 a UI benefits debit card to the Defendants' Address.

7

18. In furtherance of the fraudulent scheme, the defendants ABDEL SOLIMAN and AURORA SPAVEN obtained the UI benefits debit card, and, on or about July 19, 2016, SPAVEN used the debit card to make purchases and withdraw cash.

19. The defendants ABDEL SOLIMAN and AURORA SPAVEN, together with others, repeated this process and filed false UI benefits claims for multiple claimants, and sought UI benefits totaling approximately $272,734.

## COUNT ONE
(Conspiracy to Defraud the United States—The Tax Fraud Scheme)

20. The allegations contained in paragraphs one through 19 are realleged and incorporated as if fully set forth in this paragraph.

21. In or about and between January 2012 and December 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ABDEL SOLIMAN and AURORA SPAVEN, together with others, did knowingly and willfully conspire to defraud the United States by impeding, impairing, obstructing and defeating the lawful government functions of the IRS in the ascertainment, computation, assessment and collection of revenue, specifically, causing the preparation of fraudulent Forms 1040 and Forms W-2.

22. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants ABDEL SOLIMAN and AURORA SPAVEN, together with others, committed and caused to be committed, among others, the following:

## OVERT ACTS

(a) On or about January 31, 2012, SOLIMAN and SPAVEN, together with others, through Soliman Tax Services, filed and caused to be filed electronically with the IRS a Form 1040 for John Doe 1, an individual whose identity is known to the United States Attorney, that attached a fraudulent Form W-2 stating that John Doe 1 earned wages from MSS and had taxes withheld, and claimed a tax refund in the amount of approximately $8,151.

(b) Based on the information submitted in John Doe 1's Form 1040, on or about February 15, 2012, the IRS electronically transferred approximately $8,151 to a Banco Popular account in the name of SPAVEN.

(c) On or about February 19, 2012, SOLIMAN and SPAVEN, together with others, through Soliman Tax Services, filed and caused to be filed electronically with the IRS a Form 1040 for Jane Doe 1, an individual whose identity is known to the United States Attorney, that attached a fraudulent Form W-2 stating that Jane Doe 1 earned wages from Future Group and had taxes withheld, and claimed a refund in the amount of approximately $7,122.

(d) Based on the information submitted in Jane Doe 1's Form 1040, on or about February 29, 2012, the IRS electronically transferred approximately $7,122 to a TD Bank account in the name of SPAVEN.

(e) On or about August 14, 2012, SOLIMAN and SPAVEN, together with others, through Soliman Tax Services, filed and caused to be filed electronically with the IRS a Form 1040 for Jane Doe 2, an individual whose identity is known to the United States Attorney, that attached a fraudulent Form W-2 stating that Jane

Doe 2 earned wages from MSS and had taxes withheld, and claimed a refund in the amount of approximately $3,828.

(f) Based on the information submitted in Jane Doe 2's Form 1040, on or about August 29, 2012, the IRS electronically transferred approximately $3,828 to a Citibank bank account in the name of SPAVEN.

(g) On or about January 30, 2014, SOLIMAN and SPAVEN, together with others, through Soliman Tax Services, filed and caused to be filed electronically with the IRS a Form 1040 for Jane Doe 2 that attached a fraudulent Form W-2 stating that Jane Doe 2 earned wages from MSS and had taxes withheld, and claimed a refund in the amount of approximately $7,771.

(h) Based on the information submitted in Jane Doe 2's Form 1040 and in a related tax filing regarding allocation of the claimed refund, on or about February 10, 2014, the IRS electronically transferred approximately $3,546 to a JPMorgan Chase bank account in the name of a relative of SPAVEN.

(i) On or about February 26, 2014, SOLIMAN and SPAVEN, together with others, through Soliman Tax Services, filed and caused to be filed electronically with the IRS a Form 1040 for Jane Doe 1 that attached a fraudulent Form W-2 stating that Jane Doe 1 earned wages from Hammer and Lumber and had taxes withheld, and claimed a refund in the amount of approximately $5,238.

(j) Based on the information submitted in Jane Doe 1's Form 1040, on or about March 6, 2014, the IRS electronically transferred approximately $5,238 to an Astoria Bank bank account in the name of an individual associated with a co-conspirator.

(k)     On or about February 20, 2015, SOLIMAN and SPAVEN, together with others, through Ascension, filed and caused to be filed electronically with the IRS a Form 1040 for John Doe 2, an individual whose identity is known to the United States Attorney, that attached a Form W-2 stating that John Doe 2 earned wages from WN Distributor and had taxes withheld, and claimed a refund in the amount of approximately $1,596.

(l)     Based on the information submitted in John Doe 2's Form 1040, on or about March 16, 2015, the IRS electronically transferred approximately $1,596 to a third-party tax service business that prepared a check in the amount of $1,459.05 payable to John Doe 2.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT TWO
(Conspiracy to Commit Wire Fraud—The Labor Fraud Scheme)

23.     The allegations set forth in paragraphs one through 19 are realleged and incorporated as if fully set forth in this paragraph.

24.     In or about and between April 2016 and December 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ABDEL SOLIMAN and AURORA SPAVEN, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the NYSDOL, and to obtain money and property from the NYSDOL, to wit: NYSUIF benefits funds, by means of materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing such scheme and artifice, to transmit and cause to be

transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT TWO

25. The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Two, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

26. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

12

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

*[signature: Bridget M. Rohde]*
BRIDGET M. ROHDE
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2015R00303
FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

*ABDEL SOLIMAN and AURORA SPAVEN,*

Defendants.

# SUPERSEDING INFORMATION

(T. 18, U.S.C., §§ 371, 981(a)(1)(C), 1343, 1349, 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c)).)

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ A.D. 20 _____

_____
*Clerk*

Bail, $ _____

*Mark E. Bini and Drew G. Rolle, Assistant U.S. Attorneys (718) 254-7000*